(No. 67533.—

DIANE SPERLING, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Rush-Presbyterian-St. Luke's Hospital, Appellant).

*Opinion filed May 17, 1989.—Rehearing denied September 29, 1989.*

CALVO, J., took no part.

Kane, Doy & Harrington, Ltd., of Chicago (Robert E. Harrington, of counsel), for appellant.

Charles G. Haskins, Jr., of George J. Cullen & Assoc., Ltd., of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

This is an appeal from the Industrial Commission Division of the Illinois Appellate Court. The claimant, Diane Sperling, filed an application for adjustment of claim under the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1977, ch. 48, par. 172.36 *et seq.*). Claimant alleged that she contracted hepatitis arising out of and in the course of her employment as an operating room nurse at Rush-Presbyterian-St. Luke's Hospital (hospital). The arbitrator found that claimant had not established the requisite causal connection between her employment and her contraction of hepatitis. The Industrial Commission affirmed the arbitrator's decision to deny compensation. The circuit court of Cook County confirmed the Industrial Commission's decision. The appel-

late court reversed, holding that the Commission's determination that claimant had failed to establish a causal connection between her employment and disease was contrary to the manifest weight of the evidence. (171 Ill. App. 3d 714.) We granted leave to appeal and now reverse the decision of the appellate court and affirm the decision of the circuit court.

The facts presented before the arbitrator and the Commission are as follows. Claimant was hired by the employer, the hospital, as an operating room nurse in January 1978. She had been employed at another hospital as an operating room nurse for the five-year period preceding her employment with the hospital. Sometime toward the end of September 1978, claimant began feeling fatigued and sought medical attention. Dr. Michael Ramsey, one of the claimant's physicians, testified that he examined claimant on October 4, 1978, and at that time she complained of fever, headaches and fatigue, which had begun approximately two weeks before the examination. Because Dr. Ramsey noted that the claimant's eyes were yellowish, he ordered tests. When the results of the liver enzyme tests indicated evidence of hepatitis, Dr. Ramsey referred the claimant to Dr. John Payne, a liver disease specialist. Dr. Payne confirmed the diagnosis of hepatitis, and a liver biopsy performed in January 1979 indicated that claimant had contracted chronic persistent hepatitis B.

Claimant testified that she pricked herself at least once a week with sharp operating room instruments that had been exposed to patients' blood. Additionally, the claimant's nursing supervisor wrote a brief letter, which was introduced into evidence, confirming the likelihood of this type of event. Claimant, however, was unable to provide a description of even one incident where she had been pricked with an instrument containing a patient's

blood. There was also no evidence that any patient with whom she worked was infected with hepatitis.

Dr. Ramsey testified that he believed that claimant had contracted the hepatitis through work-related activities. He based this conclusion on articles and textbooks which stated that health care workers have a greatly increased risk of contracting hepatitis B due to exposure to infected patients' tissue and body fluids. Although claimant had recently traveled to Aruba, Mexico, and the Caribbean, and had been bitten by a parrot in Mexico, Dr. Ramsey testified that he did not believe that was the cause of the hepatitis. Dr. Ramsey based this conclusion on the fact that hepatitis B is transmitted through physical contact with human—not animal—body fluids.

Dr. Payne testified that hepatitis B is transmitted through body secretions, through intimate sexual activity, and through the blood of an infected person. Dr. Payne was not able to conclude that claimant had contracted the hepatitis through her activities as an operating room nurse. Although Payne stated that the potential for infection in the operating room was present, he could not determine whether claimant had contracted the disease as a result of her employment without more information about her personal and sexual history.

After reviewing the testimony, the arbitrator determined that claimant had failed to meet the requisite statutory standard of proof of causal connection between her employment and the hepatitis. As noted above, this finding was affirmed by the Commission and confirmed by the circuit court. The appellate court reversed and remanded the cause to the Commission for a determination of the appropriate compensation to be accorded Sperling. (171 Ill. App. 3d at 719-20.) In reaching this decision, the appellate court stated:

> "Although our courts have traditionally required direct proof that the claimant has in fact been exposed to a

disease while employed (see *County of Cook v. Industrial Comm'n* (1973), 54 Ill. 2d 79, 275 N.E.2d 465; *Lewis v. Industrial Comm'n* (1967), 38 Ill. 2d 461, 231 N.E.2d 593; *Byrd v. Industrial Comm'n* (1965), 33 Ill. 2d 115, 210 N.E.2d 535; *City of Chicago v. Industrial Comm'n* (1949), 403 Ill. 105, 85 N.E.2d 665), we observe that the direct proof approach is too rigid for rote application because it fails to take into account situations where a health care worker could be exposed to an undetected disease carrier through an employment-related risk. Stated differently, it is illogical to require the establishment of a direct causal link when there is a *prima facie* showing that the disease easily could have been contracted by the health care worker during employment from an undetected source. We further note that the instant claimant could not possibly determine the precise exposure episode which caused her disease because she may not have developed symptoms until long after the incubation period.

\*\*\*

After analyzing the applicable legal principles, we conclude that the ultimate issue of a health care worker's exposure to an occupational disease may be inferred from indirect proof when it is established that direct proof may be irrelevant. Since the Commission based its \*\*\* factual determination on the assumption that claimant had to present direct proof that she was exposed to hospital patients with hepatitis B, we must reexamine the evidence to see if the indirect proof approach is applicable and, if so, whether the Commission's decision can be supported when the evidence is viewed under the indirect proof approach." 171 Ill. App. 3d at 719-20.

The above-quoted rationale of the appellate court raises several problems. First, the court appears to assume that the finder of fact required direct proof of an exposure to establish a causal connection between the employment and the disease. This is not the requisite statutory standard. The relevant portion of the statute provides:

"A disease shall be deemed to arise out of the employment if there is apparent to the rational mind, upon con-

sideration of all the circumstances, a causal connection between the conditions under which the work is performed and the occupational disease. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin or aggravation in a risk connected with the employment and to have flowed from that source as a rational consequence." Ill. Rev. Stat. 1983, ch. 48, par. 172.36(d).

Nothing in the statutory language requires proof of a direct causal connection. Further, the legislature explicitly changed this requirement in 1975 when it deleted the word "direct," which had preceded "causal connection," from the statutory language. Public Act 79—78, approved June 30, 1975, rewrote the first two paragraphs of subparagraph (d) of section 1 and eliminated the requirement that it be apparent that there is a *direct* causal connection. (See Ill. Ann. Stat., ch. 48, par. 172.36, Historical Note, at 209 (Smith-Hurd 1986).) The cases cited by the appellate court that required a direct causal connection predate this statutory change and are thus inapplicable in the present matter. Further, nothing in the record indicates that the finder of fact did not reach its decision by considering the appropriate statutory criteria. Therefore, the appellate court erred when it adopted the "indirect proof" test in place of the statutory standard.

Because this case involves judicial review of an administrative agency's finding of fact, our role is somewhat circumspect. It is a well-established rule of law that a reviewing court will not set aside the decision of an administrative agency unless the findings are against the manifest weight of the evidence. (*Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 70-71; *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391.) Our review of the record indicates that the decision of the arbitrator and the Commission that the claimant had failed to

show a causal connection between the conditions of her employment as an operating nurse and her contraction of hepatitis B was not against the manifest weight of the evidence. Claimant did not offer any evidence that she had had contact with a carrier of hepatitis B during the course of her employment. Although the testimony indicates that it is probable that an operating nurse could contract hepatitis from an infected patient's blood, the fact finder in the present case, after examining the evidence and observing the demeanor of the witnesses, determined that the claimant had not met the requisite burden of proof in showing a causal connection between her employment and the contraction of her disease. We cannot say that this finding was against the manifest weight of the evidence. We must, therefore, affirm, even though our decision, were we the trier of fact, may have been different.

We note that the appellate court relied heavily upon the Washington Supreme Court case of *Sacred Heart Medical Center v. Department of Labor & Industries* (1979), 92 Wash. 2d 631, 600 P.2d 1015, in reaching its holding. The facts presented in *Sacred Heart* were very similar to the facts of the case now before us. In that case, an intensive care nurse contracted hepatitis and filed an industrial insurance claim alleging that her hepatitis was a compensable occupational disease under the applicable State statute. After hearing the evidence, the fact finder found that the claimant had proven a causal connection between her employment and the contraction of the disease. The appellate court reversed the agency, holding that the claimant had failed to establish the requisite causal connection. The Washington Supreme Court reversed the appellate court and affirmed the fact finder. In reaching this decision the court stated:

> "It is sufficient if the medical testimony *shows* the causal connection. If, from the medical testimony given and the

facts and circumstances proven by other evidence, a reasonable person can infer that the causal connection exists, we know of no principle which would forbid the drawing of that inference." (Emphasis in original.) 92 Wash. 2d at 636-37, 600 P.2d at 1019.

In affirming the decision of the fact finder, the Washington Supreme Court concluded that the fact finder could give weight to medical testimony indicating that an intensive care nurse was more likely than the general public to contract hepatitis. The court there deferred to the inference drawn by the fact finder. In our case, however, the finder of fact, under the evidence, refused to draw the inference that there was a causal connection between the employment and the disease. In the same manner that the Washington court deferred to the decision of the fact finder, we must extend to the finding of the Industrial Commission the deference required by law. We must simply determine whether the fact finder's decision was against the manifest weight of the evidence. Based upon the language of our statute and the Commission's function in implementing that statute, we must assume that the fact finder examined all of the proffered evidence and accorded appropriate weight to all of the testimony in reaching its decision. Because our review of the record demonstrates that the Commission's decision that the claimant failed to show a causal connection between her employment and her hepatitis was not against the manifest weight of the evidence, we reverse the decision of the appellate court and affirm the decision of the circuit court of Cook County.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.