909 P.2d 14

**Sonia MADRID, Plaintiff–Appellant,**

v.

**LINCOLN COUNTY MEDICAL CENTER, a New Mexico Corporation, Defendant–Appellee.**

No. 15940.

Court of Appeals of New Mexico.

Oct. 3, 1995.

Certiorari Granted Dec. 7, 1995.

Alexander A. Wold, Jr., Walter M. Hart III, Alexander A. Wold, Jr., P.C., Albuquerque, for Plaintiff–Appellant.

W. Robert Lasater, Jr., Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Defendant–Appellee.

## OPINION

PICKARD, Judge.

1. Sonia Madrid (Plaintiff) appeals the district court order granting summary judgment to Lincoln County Medical Center (Defendant) on Plaintiff's claim that Defendant's negligence caused her to suffer emotional distress and other damages by exposing her to bodily fluids that may have been infectious. As we cannot say that Plaintiff's action is barred as a matter of law on the facts of this case, we reverse and remand to the trial court for further proceedings.

2. Summary judgment is proper if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. SCRA 1986, 1–056(C) (Repl.1992); *Koenig v. Perez*, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). Defendant argues that, even under the facts as alleged, Plaintiff is not entitled to relief. *See Matkins v. Zero Refrigerated Lines, Inc.*, 93 N.M. 511, 513, 602 P.2d 195, 197 (Ct.App. 1979) (even if facts are undisputed, the reviewing court must determine if a basis is present to decide the issues as a matter of law). Plaintiff argues that there are genuine issues of material fact to be determined by the jury as factfinder, precluding summary judgment. *See Kelly v. Montoya*, 81 N.M. 591, 595, 470 P.2d 563, 567 (Ct.App.1970) (if reasonable minds might differ, summary judgment is inappropriate). In reviewing the district court's grant of summary judgment, we view the facts in the light most favorable to Plaintiff as the party opposing summary judgment, drawing all inferences in favor of her. *Baer v. Regents of Univ. of Cal.*, 118 N.M. 685, 688, 884 P.2d 841, 844 (Ct.App. 1994).

3. On September 28, 1992, Plaintiff was transporting medical samples from Defendant hospital to laboratories in Albuquerque for analysis. During transport of the sam-

ples, Plaintiff was splashed on her hands and elsewhere with a bloody fluid. Two to four separate medical sample containers were wet with bloody fluid and could have contributed part of their contents to the bloody fluid that splashed on Plaintiff. At the time of the incident, Plaintiff had unhealed paper cuts on her hands which came into contact with the bloody fluid. Based on widespread warnings and publicity regarding AIDS, Plaintiff knew that AIDS could be transmitted by contact with blood and other bodily fluids.

4. About two months after the incident, Plaintiff was told that a woman from whom one of the samples had been taken had been tested and that the test was negative. Plaintiff informed Defendant that she believed that more than one test was required to determine whether a person had HIV. She said her belief was based on the number of tests she was instructed to undergo by her doctor in order to determine whether she had contracted HIV from being splashed with the bloody fluid. She also informed Defendant that more than one sample was involved in the splashing. Despite Defendant's assurances that the matter would be looked into, Plaintiff was not told that the tested patient was the only one whose sample had leaked and continued to believe that more than one sample had contacted her until Defendant, in connection with its motion for summary judgment, filed an affidavit on July 29, 1994, indicating otherwise.

5. Defendant submitted the following materials in support of its motion for summary judgment:

6. (1) The affidavit of a medical technician employed by Defendant who was contacted on October 6, 1992, to obtain a test of the patient from whom the pathology specimen that was involved in the incident was obtained.

7. (2) The affidavit of a laboratory assistant supervisor involved in inspecting the leaking medical samples at the laboratory on the evening of September 28, 1992. When Plaintiff arrived on that date she indicated that the specimen containers she was transporting from Defendant had leaked. The affiant then retrieved the large plastic bag of specimens from the back of Plaintiff's car.

When he opened the plastic bag, two coolers at the bottom of the bag were inverted. By drying the tissue biopsy containers and checking them for leaks, the affiant determined that a placenta had leaked fluid from its container, that it was the only specimen that had leaked in that cooler, and that the specimens in the other inverted cooler had not leaked.

8. (3) Defendant also submitted the materials Plaintiff provided to Defendant in response to interrogatories showing the medical services and costs Plaintiff incurred after the splashing incident. Plaintiff, on the advice of a physician, was inoculated against and tested for hepatitis A and B and tested for HIV the day after exposure and at various physician-recommended time intervals between September 29, 1992, and April 14, 1993. All tests on Plaintiff for hepatitis and HIV were negative.

9. In response to Defendant's motion for summary judgment, Plaintiff filed a response and opposing affidavit stating, among other things, that following her exposure to the bloody medical samples a doctor told her that she should be tested for the AIDS virus on a periodic basis "for at least one (1) year following the incident of September 28, 1992." Similarly, a physician's assistant told her she "would need to be tested for the AIDS virus for a period of six (6) months to one year at least."

10. Neither party pointed us to, and we were not able to find, any evidence in this record pertaining to the basic currently known medical facts on HIV and AIDS, such as the means of transmission, the methods and accuracy of testing, and the widespread public knowledge about the deadly consequences once HIV and AIDS are contracted. The basic current medical facts, however, are laid out in case precedent in other jurisdictions that have considered questions of recovery in situations similar to the facts of this case, and for purposes of this opinion, we take judicial notice of them. *See* SCRA 1986, 11–201 (Repl.1994); *see also Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327, 331–33 (1993).

11. HIV is a virus that kills white blood cells, leaving the infected person vulnerable

to a host of parasitic diseases such as pneumonia, at which point the infected person is usually diagnosed as suffering from "full-blown" AIDS. *See Benjamin R. v. Orkin Exterminating Co.,* 182 W.Va. 615, 390 S.E.2d 814, 815 n. 2 (1990). HIV is transmitted by exposing one's bloodstream to certain bodily fluids of a person infected with HIV. *Faya,* 620 A.2d at 332. While such exposure usually is accomplished through activities such as unprotected sexual intercourse, needle sharing, or the use of contaminated blood products, *Ordway v. County of Suffolk,* 154 Misc.2d 269, 583 N.Y.S.2d 1014, 1016 (Sup.Ct. 1992), it can also be accomplished by exposing an open wound to bodily fluid infected with HIV. *Faya,* 620 A.2d at 332. Once infected with HIV, a person may not show symptoms of AIDS for seven to ten years, but "[i]t is extremely unlikely that a patient who tests HIV-negative more than six months after a potential exposure will contract the disease as a result of that exposure." *Burk v. Sage Prods., Inc.,* 747 F.Supp. 285, 288 (E.D.Pa.1990) (mem.). Current tests are over ninety-nine percent accurate. *K.A.C. v. Benson,* 527 N.W.2d 553, 557 n. 5 (Minn.1995). Ninety-five percent of HIV-infected individuals will test HIV positive within six months of the date of exposure. *Id.* Therefore after six months of testing, "if the test results are negative for HIV antibodies, there is a relative certainty that there has been no exposure to HIV." Ivan Yip, Note, *Aidsphobia and the "Window of Anxiety": Enlightened Reasoning or Concession to Irrational Fear?,* Brook.L. Rev. 461, 470 (1994). There is no known cure for AIDS, and the life expectancy for a person who has developed full-blown AIDS is generally about two years. *Benjamin R.,* 390 S.E.2d at 815 n. 2. More than one million adults in North America are infected with HIV. Yip, *supra,* at 468. In the last ten years, the federal and state governments, as well as private organizations, have widely disseminated information about the modes of transmission and the effects of AIDS, so much so that these facts are generally known to the public. *See Castro v. New York Life Ins. Co.,* 153 Misc.2d 1, 588 N.Y.S.2d 695, 698 (Sup.Ct.1991).

12. Hepatitis B may also be life threatening. Similarly, like AIDS, hepatitis B may be contracted through a mixing of human blood, serum, body secretions, or fluids. *Rosas v. Workers' Compensation Appeals Bd.,* 16 Cal.App.4th 1692, 20 Cal.Rptr.2d 778, 780 (1993) (hepatitis B may be spread by infected blood or blood products); *Sperling v. Industrial Comm'n,* 171 Ill.App.3d 714, 121 Ill.Dec. 633, 635, 525 N.E.2d 940, 942 (1988) (infection may result from exposure to patients' tissue and body fluids); *Sclafani v. Peter S. Cusimano, Inc.,* 130 Mich.App. 728, 344 N.W.2d 347, 348 (1983) (exposure to hepatitis B may result through contact with blood or serum).

13. The question before us is whether Plaintiff should be allowed to go to the jury to prove that she has suffered emotional distress and other damages, including costs of medical testing, resulting from being splashed with a bloody fluid on unhealed cuts on her hands when medical samples, which were packaged by Defendant and which Plaintiff was transporting in connection with her job to laboratories for analysis, leaked. For purposes of this opinion, in light of the standard of review, we accept Plaintiff's assertions that she did not know that the patient from whom the leaking sample originated tested negative for HIV and hepatitis until approximately two months after the incident; she did not know that the bloody fluid came from only this one donor for almost two years; and she did not know that she had not contracted hepatitis or HIV for six to seven months after the incident.

14. Defendant contends that Plaintiff's cause of action must fail because she cannot prove that she was actually exposed to HIV and hepatitis. At oral argument, Defendant urged this Court to limit a plaintiff's recovery for fear of contracting deadly infectious diseases such as AIDS, as a matter of policy, to those plaintiffs who can prove that they were actually exposed to the disease. The actual exposure requirement, as proposed by Defendant, would consist of two parts with the plaintiff having the burden to prove both elements: (1) that the exposure incident includes a medically sound mechanism of transmission and (2) that HIV is actually

present in the exposure material. Failure to adopt these threshold requirements, Defendant warns, would result in a flood of frivolous claims in the court systems, soaring costs of medical insurance and medical expenses, and strain on the availability of health care services due to the diversion of resources from genuine claims.

15. Plaintiff argues that if Plaintiff's injury was foreseeable, Defendant owed her a duty. Plaintiff also argues that this Court should recognize that Defendant owes a duty to Plaintiff because Defendant violated Plaintiff's interests in personal and family security when the bloody fluid of unknown infectious status splashed Plaintiff as a result of Defendant's failure to properly package the medical samples. At oral argument, Plaintiff argued that the actual exposure requirement proposed by Defendant would arbitrarily cut off many legitimate and genuine claims. Plaintiff argued that she should be allowed to proceed to the jury on the issue of whether Plaintiff's fear was reasonable under the circumstances of this case.

16. The actual exposure test has been adopted by the majority of courts in other jurisdictions based on various rationales. Those rationales include a fear of excessive litigation, a sense that damages for emotional distress are too speculative, a belief that without an actual exposure test a plaintiff's fears are unreasonable, a lack of the requisite "physical impact," or a lack of proof that plaintiff was in any "zone of danger." *See, e.g., Barrett v. Danbury Hosp.*, 654 A.2d 748, 756–57 (Conn.1995); *Neal v. Neal*, 125 Idaho 617, 622, 873 P.2d 871, 876 (1994); *Doe v. Surgicare of Joliet, Inc.*, 268 Ill.App.3d 793, 205 Ill.Dec. 593, 596, 643 N.E.2d 1200, 1203 *appeal denied*, 158 Ill.2d 550, 206 Ill.Dec. 835, 645 N.E.2d 1357 (1994); *K.A.C.*, 527 N.W.2d at 558–59; *Kaufman v. Physical Measurements, Inc.*, 615 N.Y.S.2d 508, 509 (App.Div.1994); *Hare v. State*, 173 A.D.2d 523, 570 N.Y.S.2d 125, 127 *appeal denied*, 78 N.Y.2d 859, 575 N.Y.S.2d 455, 580 N.E.2d 1058 (1991); *Ordway*, 583 N.Y.S.2d at 1017; *Petri v. Bank of New York Co.*, 153 Misc.2d 426, 582 N.Y.S.2d 608, 613 (Sup.Ct.1992); *Doe v. Doe*, 136 Misc.2d 1015, 519 N.Y.S.2d 595, 598 (Sup.Ct.1987); *Seimon v. Becton*

*Dickinson & Co.*, 91 Ohio App.3d 323, 632 N.E.2d 603, 605 (1993); *Funeral Servs. by Gregory, Inc. v. Bluefield Community Hosp.*, 186 W.Va. 424, 413 S.E.2d 79, 82–84 (1991), *overruled on other grounds by Courtney v. Courtney*, 190 W.Va. 126, 437 S.E.2d 436, 443 (1993); *Johnson v. West Virginia Univ. Hosps.*, 186 W.Va. 648, 413 S.E.2d 889, 892–93 (1991); *see also Kerins v. Hartley*, 27 Cal.App.4th 1062, 33 Cal.Rptr.2d 172, 178 (1994) (plaintiff must prove both actual exposure and that it is more likely than not that plaintiff will develop AIDS); *Herbert v. Regents of Univ. of Cal.*, 26 Cal.App.4th 782, 31 Cal.Rptr.2d 709, 711–12 (1994) (showing of exposure and significant risk required); *Lubowitz v. Albert Einstein Medical Ctr.*, 424 Pa.Super. 468, 623 A.2d 3, 5 (1993) (plaintiff had to actually contract HIV).

17. A minority of courts in some of these and other jurisdictions allow claims for emotional distress damages for fear of contracting AIDS without requiring that a plaintiff actually be exposed to HIV. *See, e.g., Marchica v. Long Island R.R.*, 31 F.3d 1197, 1203–05 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995); *Bordelon v. St. Frances Cabrini Hosp.*, 640 So.2d 476, 477–79 (La.Ct.App.1994); *Faya*, 620 A.2d at 333, 336–37; *Castro*, 588 N.Y.S.2d at 698; *Howard v. Alexandria Hosp.*, 245 Va. 346, 429 S.E.2d 22, 24–25 (1993).

18. If we were deciding this question in a legal vacuum, we might well be persuaded by the majority position. We must, however, consider this in the overall context of New Mexico tort law. While the rationales utilized by those jurisdictions that follow the actual exposure test have some application in New Mexico, we no longer follow the "zone of danger rule" for determining duty. *Torres v. State*, 119 N.M. 609, 615, 894 P.2d 386, 392 (1995). We also no longer require a plaintiff to suffer a physical impact in order to recover emotional distress damages. *Folz v. State*, 110 N.M. 457, 471, 797 P.2d 246, 260 (1990). Accordingly, we have recognized that a plaintiff may recover damages for the intentional infliction of emotional distress suffered as the result of a defendant's misconduct done with malice and

reckless disregard for the harm to the plaintiff. *See Dominguez v. Stone,* 97 N.M. 211, 214–15, 638 P.2d 423, 426–27 (Ct.App.1981). We also allow certain bystanders to recover damages for the negligent infliction of emotional distress suffered as a result of witnessing an accident involving another person. *See Ramirez v. Armstrong,* 100 N.M. 538, 540–43, 673 P.2d 822, 824–27 (1983), *overruled in part by Folz,* 110 N.M. at 471, 797 P.2d at 260. Furthermore, we have held that emotional distress damages are recoverable, even if they are the only damages alleged, as long as the plaintiff proves that they are "severe," *see Flores v. Baca,* 117 N.M. 306, 313, 871 P.2d 962, 969 (1994); are of such nature that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case," *Folz,* 110 N.M. at 469, 797 P.2d at 258 (internal citations omitted); and are proven by the plaintiff. *Id.* at 470, 797 P.2d at 259. Finally, we have consistently refused to yield to defendants' warnings of impending floods of liability in favor of allowing genuine claims. *See Ramirez,* 100 N.M. at 542, 673 P.2d at 826. Thus, many of Defendant's policy rationales, taken from majority-rule cases, have been rejected in recently-decided analogous New Mexico cases.

19. We are mindful, however, that tort law does not provide a remedy for every brush with danger or every fear that any person experiences. *See Solon v. WEK Drilling Co.,* 113 N.M. 566, 569, 829 P.2d 645, 648 (1992). There are, moreover, innumerable, tremendous risks inherent in our modern-day, complex society. *See Wilschinsky v. Medina,* 108 N.M. 511, 516, 775 P.2d 713, 718 (1989) ("We do not live in a risk-free society, but rather a risk-allocative one."). We have held, therefore, that a plaintiff bystander must satisfy certain threshold requirements, as well as prove all of the elements of a traditional claim for negligence, in order to state a viable cause of action for recovery of emotional distress damages. *Folz,* 110 N.M. at 468–69, 797 P.2d at 257–58; *Ramirez,* 100 N.M. at 541–42, 673 P.2d at 825–26; *Dawson v. Wilheit,* 105 N.M. 734, 736, 737 P.2d 93, 95 (Ct.App.1987). The threshold requirements were developed to

effectively ensure the possibility of recovery by deserving claimants, while at the same time placing constraints on liability of defendants. The traditional legal principles of the tort of negligence, however, remain unaltered: "Ordinary care is still required, and use of such ordinary care will relieve potential defendants from liability." *Ramirez,* 100 N.M. at 542, 673 P.2d at 826.

20. In determining whether the facts as alleged by Plaintiff, if proved, state a cause of action for the negligent infliction of emotional distress and other damages, we must decide as a matter of law: (1) whether Defendant owes a duty to Plaintiff, and (2) whether Plaintiff should be required to satisfy any threshold criteria applicable to the context of the fear of contracting a deadly disease such as AIDS, which threshold criteria would essentially place limits on Defendant's duty to Plaintiff.

21. The question of duty is an evolving concept under New Mexico law. In *Ramirez,* our Supreme Court observed that duty and foreseeability have been closely integrated concepts in tort law since the court in *Palsgraf v. Long Island Railroad,* 248 N.Y. 339, 162 N.E. 99 (1928), stated the issue of foreseeability in terms of duty. *Ramirez,* 100 N.M. at 541, 673 P.2d at 825. Similarly, in *Calkins v. Cox Estates,* the Court stated that foreseeability is an integral part of duty: " '[i]f it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant.' " 110 N.M. 59, 62, 792 P.2d 36, 39 (1990) (quoting *Ramirez,* 100 N.M. at 541, 673 P.2d at 825).

22. Our Supreme Court has long recognized, however, that the question of duty is not merely a matter of determining whether a particular plaintiff, a particular event, and a particular injury are foreseeable. In *Ramirez,* for example, the Supreme Court focused on foreseeability *and* whether the obligation of the defendant is one " 'to which the law will give recognition and effect.' " 100 N.M. at 541, 673 P.2d at 825 (quoting William L. Prosser, *The Law of Torts* § 53, at 324 (4th ed.1971)). While noting that cases dealing with the negligent infliction of emo-

tional distress often couch the issue in terms of foreseeability, the Court in *Ramirez* also stated that "[m]ore important to the acceptance of [the new] cause of action [a bystander's right to recover damages for the negligent infliction of emotional distress] is a determination of the specific personal interest to be protected." *Id.* This interest, in turn, establishes the legally recognized obligation of the defendant to the plaintiff. *Id.* Similarly, while recognizing the role of foreseeability in determining whether a duty exists, our Supreme Court in *Calkins* also considered the "relationship of the parties, the plaintiff's injured interests and the defendant's conduct; it is essentially a policy decision based on these factors that the plaintiff's interests are entitled to protection." 110 N.M. at 63, 792 P.2d at 40.

23. Our Supreme Court has recently clarified how that policy decision is made by delineating the role of the courts and the other branches of government in determining questions of duty; the roles of policy and foreseeability in determining whether a duty exists; and the role of the judge and the jury in answering the questions of negligence. *See Torres,* 119 N.M. 609, 894 P.2d 386. In *Torres,* the Court articulated duty as a legal question determined by policy. *Id.* at 612, 894 P.2d at 389. Policy, in turn, is "the particular domain of the legislature" or made by authorized executive branch officials and agencies. *Id.* "Courts should make policy in order to determine duty only when the body politic has not spoken and only with the understanding that any misperception of the public mind may be corrected shortly by the legislature." *Id.* Foreseeability, on the other hand, is a question of law only when a court, "in reviewing whether a duty exists, can determine that the victim was unforeseeable to any reasonable mind." *Id.* at 613, 894 P.2d at 390. Otherwise, foreseeability, as well as breach, proximate cause, and comparative liability are questions for the jury. *Id.* at 616, 894 P.2d at 393.

24. In *Torres,* the Supreme Court found the policy questions of duty answered by relevant statutes. Defendant contends that existing New Mexico statutes favor, as a policy matter, controlling the unreasonable fear of AIDS and limiting Defendant's duty in this case. At oral argument, Defendant referred this Court to the following statutes: (1) the Medical Malpractice Act, NMSA 1978, Sections 41–5–1 to –28 (Repl. Pamp.1989 & Cum.Supp.1995) (placing limits on malpractice liability, as well as enacting procedures designed to control malpractice damages); (2) the 1995 amendments to NMSA 1978, Section 28–1–7 (Cum.Supp. 1995) of the New Mexico Human Rights Act, NMSA 1978, Sections 28–1–1 to –7, 28–1–9 to –14 (Repl.Pamp.1991 & Cum.Supp.1995) (now prohibiting discrimination by employers, unless based on a bona fide occupational qualification, against persons with a "serious" medical condition); and (3) NMSA 1978, Sections 47–13–2 and 47–13–3 (Repl. Pamp.1995) of the real property law (limiting realtor's disclosure obligations, and not allowing buyers a cause of action or the right to terminate or rescind a real estate transaction based on the fact or suspicion that the real property is or has been owned or occupied by a person with AIDS or other disease determined by medical evidence as highly unlikely to be transmittable to others or not known to be transmitted through the occupancy of improvements to real property).

25. We note, however, that none of the statutes under scrutiny here were enacted for the specific benefit or protection of any of the parties in this case. *See Kelly,* 81 N.M. at 593–94, 470 P.2d at 565–66 (the violation of a statute which is enacted for the benefit or protection of the party claiming the injury is negligence per se, which includes the element of foreseeability where plaintiff is a beneficiary of the statute violated); *see also Torres,* 119 N.M. at 614–15, 894 P.2d at 391–92. Plaintiff in this case is not a realtor or a person selling real estate; Plaintiff is not complaining about employment discrimination; and Plaintiff is not a malpractice victim. In our view, therefore, these statutes do not definitively answer the question of duty or policy in this case.

26. Nevertheless, some of these statutes do reflect declarations of legislative policy with regard to society's need to maintain relationships, obligations, and transactions in

certain contexts, when fears and hysteria concerning the transmission of HIV have no basis in medical fact. Thus, we must be mindful of them. *See also* Debbie E. Lanin, Note, *The Fear of Disease as a Compensable Injury: An Analysis of Claims Based on AIDS Phobia*, 67 St. John's L.Rev. 77, 103 (1993). In the real estate context, for example, because it is currently a medical fact that AIDS cannot be transmitted merely by the occupancy of real property improvements, a buyer's decision to terminate or rescind real estate transactions based solely on the fact or belief that a person with AIDS occupied the real property, must give way, as a matter of legislative policy, to society's interest in maintaining the marketability and transferability of real estate.

27. In this case, New Mexico policy as expressed in these statutes does indicate, therefore, that a plaintiff alleging emotional distress damages resulting from the fear of contracting a deadly disease must, as a threshold requirement, prove that the contact incident includes a medically recognized channel of exposure of the disease to the plaintiff. In this case, Plaintiff has asserted sufficient facts, if proven, to demonstrate that the exposure incident includes a medically sound method of transmission through the unhealed paper cuts on her hands which came into contact with the bloody fluid.

■■■ 28. In the absence of a statute specifically drafted to protect Plaintiff's interests in this case, in order to resolve the question of duty, we also consider the relationship of the parties, Plaintiff's injured interests, Defendant's conduct in light of those interests, and other principles comprising the law. *See Calkins*, 110 N.M. at 63, 792 P.2d at 40; *Ramirez*, 100 N.M. at 541, 673 P.2d at 825; *see also Torres*, 119 N.M. at 612, 894 P.2d at 389 (discussing determination of duty). Defendant had a contractual relationship with Plaintiff's employer for the transport of medical samples from Defendant to the laboratory. Given the well-known facts about how HIV and AIDS are transmitted and the deadly ramifications if contracted, Plaintiff had a personal interest and the interests of her family members at stake in not being splashed with blood or bloody fluid of un-known infectious status from leaks in the containers which she was transporting in connection with her job. Defendant, therefore, had a duty to package the medical samples in such a way as to prevent leakage during transport. Defendant, in fact, admits such duty, for purposes of its summary judgment motion, inasmuch as it concedes it could be liable if the samples were HIV positive and Plaintiff contracted AIDS.

29. Having determined that this Defendant owed a duty to this Plaintiff, the only instance in which summary judgment could be granted to Defendant in this case is (1) where no reasonable mind could find that this Plaintiff, the event, or her injury were foreseeable; (2) where no reasonable mind could conclude that Defendant breached its duty to Plaintiff; or (3) where no reasonable mind could conclude that Defendant's breach proximately caused Plaintiff's damages. *See Torres*, 119 N.M. at 616, 894 P.2d at 393. Based on these criteria, we cannot say that there exists no genuine issue of material fact for determination by the jury in this case. Hence, summary judgment is not appropriate. *See Kelly*, 81 N.M. at 595, 470 P.2d at 567.

■■■ 30. First, Plaintiff has asserted sufficient facts such that the question of whether her injury was reasonably foreseeable should be submitted to a jury. There is a question of fact as to whether Plaintiff was a foreseeable injured party since: (1) she was, through her employer, contractually involved in the transport of the samples; (2) leakage was a foreseeable event resulting from negligent packaging; and (3) Plaintiff's emotional distress, if "severe" and if proven, and the medical expenses she incurred under the circumstances were foreseeable damages to Plaintiff as a result of Defendant's negligent packaging. Those circumstances were that she incurred the expenses on the advice of a physician to be tested and inoculated, due to the unknown infectious status of the samples along with the well-known deadly consequences of contracting HIV or hepatitis.

31. Second, Defendant does not contend that Plaintiff has asserted insufficient facts regarding a breach of its duty to package the medical samples to prevent leakage during

transport to the laboratory. It is uncontested that the samples did leak, and Defendant's summary judgment motion was therefore based on other principles of law.

■ 32. Third, there is sufficient evidence to require a jury to decide whether Plaintiff's fear of contracting HIV or hepatitis was proximately caused by Defendant's breach, since, at least for a period of time, her fear could be considered to have been reasonable. *See Faya*, 620 A.2d at 339 (implying that only reasonable fear is proximately caused by a defendant's negligence); James C. Maroulis, Note, *Can HIV–Negative Plaintiffs Recover Emotional Distress Damages For Their Fear of AIDS?*, 62 Fordham L.Rev. 225, 237 (1993) ("In fear-of-AIDS cases, the proximate cause inquiry revolves around the issue of whether the plaintiff's fear is reasonable."); *see also Western States Mechanical Contractors, Inc. v. Sandia Corp.*, 110 N.M. 676, 680, 798 P.2d 1062, 1066 (Ct.App.) (in negligence case, "reasonableness or unreasonableness of anything is ordinarily a mixed question of law and fact which should be determined by a jury"), *cert. denied*, 110 N.M. 653, 798 P.2d 1039 (1990). The question of whether a plaintiff's fear of AIDS is reasonable depends on the facts of each case. *See Barrett*, 654 A.2d at 757 (plaintiff's failure to show any blood was actually introduced into his body made fear unreasonable as a matter of law). We must therefore examine the present record to determine whether Plaintiff has raised a question of material fact.

33. At the time of the splashing incident, the infectious status of the samples was unknown to Plaintiff or Defendant, and a medically sound method of transmission existed through the unhealed paper cuts on Plaintiff's hands which were splashed with the bloody fluid. Plaintiff was advised by her doctor to be tested, thus indicating a probability of transmission of the infection that was not unreasonable. Plaintiff could reasonably conclude that more than one sample leaked on her, because more than one cooler was inverted when the plastic bag was initially inspected by the laboratory personnel. Moreover, the bloody fluid could have appeared to have originated from more than one sample. Finally, Plaintiff asked for full information regarding the source of the offending material. This record therefore raises a question of material fact as to whether fear of transmission of the infection was reasonable. *C.F.* Joseph Loparco, Note, *Marchica v. Long Island R.R.: "AIDS–Phobia" Recover Under the Federal Employers' Liability Act*, 15 Pace L.Rev. 575, 617 (1995) (in considering whether fear based on a needle stick is reasonable "a court should look at whether the identity of the original needle user is unknown, whether the plaintiff had knowledge (or a lack thereof) that contaminated hypodermic needles are a major source of HIV transmission, and whether the plaintiff was advised by medical specialists to receive thorough HIV blood testing after being punctured.") (footnotes omitted).

34. Even though Defendant apparently knew very soon after the incident that only one sample leaked and that this sample was probably not infected with HIV or hepatitis, this knowledge was inexplicably not communicated to Plaintiff. Therefore, on this record a fact finder could conclude Plaintiff did not know or have reason to know that she was not infected with HIV until six and one-half months after the exposure incident, at which point she received her last HIV- and hepatitis-negative test results, and the latency period for HIV under current medical knowledge had elapsed. We cannot say that Plaintiff's fear was unreasonable as a matter of law prior to receiving the results of reliable tests showing she had not been infected by HIV or hepatitis. Moreover, as observed in *Castro*, 588 N.Y.S.2d at 697, so long as this type of emotional injury is "tied to a distinct event which could cause a reasonable person to develop a fear of contracting a disease like AIDS," there is a restriction or limitation on unfounded claims.

■ 35. We conclude, however, that as soon as Plaintiff did know or have reason to know that she has not actually been infected or even contacted by HIV- or hepatitis-infected material, any remaining fear is unreasonable; that is, it was not proximately caused by Defendant's negligence, as a matter of law. *See Faya*, 620 A.2d at 337 n. 10 (plaintiff's recovery limited to a "window of

anxiety" that closes once satisfactory information becomes available that puts to rest the fear of injury). "Allowing plaintiffs to recover after the period of uncertainty compensates plaintiffs for a period in which their fear is unreasonable." Amy L. Hansen, Note, *Establishing Uniformity in HIV–Fear Cases: A Modification of the Distinct Event Approach,* 29 Val.U.L.Rev. 1251, 1285 (1995); Maroulis, *supra,* at 258–59; Mandana Shahvari, Comment, *Afraids: Fear of AIDS As a Cause of Action,* 67 Temp. L.Q. 769, 797–98 (1994); *c.f.* Susan J. Zook, Comment, *Under What Circumstances Should Courts Allow Recovery for Emotional Distress Based Upon the Fear of Contracting AIDS?,* 43 Wash. U.J. Urb. & Contemp. L. 481, 491 (1993) ("Negative AIDS test results received six months after exposure make fear of AIDS 'unreasonable' and therefore unrecoverable.")

36. What constitutes "satisfactory information" which essentially "closes" the "window of anxiety" in a given situation is ordinarily a question of fact for the jury. In this case, a jury could find Plaintiff's fear to be reasonable until she tested negative for HIV and AIDS six to seven months after the splashing incident, and that as a reasonable and foreseeable consequence of that fear for that period of time, Plaintiff suffered emotional distress, assuming her damages are severe and she can prove them as having originated from the exposure incident and arising only during the six- to seven-month period of time. If, however, in this case, there is evidence that Defendant communicated to Plaintiff that the fluid had originated from only one donor who tested negative for hepatitis and HIV, a jury may reasonably conclude that this information was "sufficient" to "close" the "window of anxiety," thereby leaving no significant period of time between the exposure incident and the communication during which Plaintiff could have incurred any severe and provable emotional distress damages. In an extreme case, where the communication is sufficiently immediate to leave no window of anxiety during which a reasonable person would be legitimately fearful, a court could rule as a matter of law in favor of the defendant.

37. Where, however, the contact incident includes an actual, medically recognized channel of exposure and the other elements of a negligence cause of action are proven, even if there is no significant "window of anxiety" period of time giving rise to emotional distress damages that could be severe under our ruling, a defendant may be liable for a plaintiff's provable costs and expenses of physician-recommended precautionary inoculation and testing during the applicable latency period of the disease which comports with current medical knowledge. Defendant conceded at oral argument that, as a matter of policy, this Court could reasonably hold that it should bear the expenses of such testing because testing would discourage the spread of disease.

38. Thus, we hold that in a case for the recovery of emotional distress damages for fear of contracting AIDS or hepatitis, a plaintiff, in addition to having the burden to prove all of the elements of a traditional claim for negligence, is required to allege and prove as threshold requirements: (1) that the exposure incident complained of includes an actual, medically sound method of transmission of a deadly disease to the plaintiff; (2) the plaintiff did not know and had no reason to know that he or she was not exposed to a deadly disease for a significant period of time after the exposure incident; and (3) that the plaintiff was aware of the possibility of contracting the deadly disease from the manner of transmission, and severe and provable emotional distress damages originated directly from the exposure incident and arose during the period of time between exposure and the time the plaintiff knew or had reason to learn that he or she had not in fact become infected with the disease. Because material, disputed factual issues existed concerning Plaintiff's claim against Defendant, the district court erred in granting summary judgment. Accordingly, we reverse and remand to the district court for further proceedings. Plaintiff is awarded her costs on appeal.

39. **IT IS SO ORDERED.**

DONNELLY and BLACK, JJ., concur.