2003-NMSC-018

73 P.3d 181

Kenneth **HERRERA**, as personal representative of the Estate of Octavio Ruiz, deceased, and Jose Encinias, Plaintiffs–Appellants,

v.

**QUALITY PONTIAC**, Defendant–Appellee,

Alma Rosa de Ruiz, Plaintiff–Appellant,

v.

Quality Pontiac, Defendant–Appellee.

No. 26,946.

Supreme Court of New Mexico.

May 16, 2003.

Rehearing Denied, July 16, 2003.

Duhigg, Cronin, Spring & Berlin, P.A., David M. Berlin, Helena Gorochow, Albuquerque, NM, for Appellants.

Yenson, Lynn, Allen & Wosick, P.A., Joseph B. Wosick, Albuquerque, NM, for Appellee.

## OPINION

SERNA, Justice.

{1} Plaintiffs–Appellants Kenneth Herrera, personal representative of Octavio Ruiz, and Jose Encinias filed a complaint for wrongful death and personal injury against Defendant–Appellee Quality Pontiac, a corporation doing business in Albuquerque, New Mexico, following a traffic accident caused by

a thief who stole a car from Defendant's lot. The district court dismissed the case with prejudice for failure to state a claim for which relief can be granted. *See* Rule 1–012(B)(6) NMRA 2003. The Court of Appeals certified the matter to this Court. *See* NMSA 1978, § 34–5–14(C) (1972); Rule 12–606 NMRA 2003. We reverse the district court.

## I. Facts and Background

■ {2} "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 650, 905 P.2d 185, 190 (1995), *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001–NMSC–034, ¶ 23 & n. 3, 131 N.M. 272, 34 P.3d 1148. Plaintiffs alleged the following facts in their complaint. On May 27, 1996, an individual took his car to Defendant for repairs. At Defendant's direction, the owner left the keys in the car and the doors unlocked. The lot was fenced, and the gate was unlocked. After 9:00 p.m., Billy Garcia entered the lot, apparently looking inside the cars for something to steal. Garcia stole the vehicle in question. The following day, at approximately 11:00 a.m., a Bernalillo County deputy sheriff observed Garcia driving quickly through a school zone and pursued him, engaging his emergency lights and sirens. Garcia drove at a speed of up to ninety miles per hour and collided head on with Plaintiffs' car, which had pulled over onto the shoulder after hearing the sirens. One occupant was killed and the other seriously injured.

{3} Plaintiffs presented an affidavit of a sociologist to the district court that asserted that "[t]he Albuquerque metropolitan area's motor vehicle theft rate of 1,345.5 per 100,000 residents was the second highest rate in the nation in 1997." [1] The expert estimated that between forty-five and eighty percent of stolen cars had been left unlocked and that between nineteen and forty-seven percent of stolen cars had the ignition keys left inside. The expert claimed that a high proportion of thefts were for the purpose of joyriding and short term transportation. The expert estimated that there is a high probability that a stolen car will be involved in traffic accidents, relying on a study which "found that nearly [seventeen percent] of all stolen cars are involved in accidents in a matter of hours or days after their theft," and another study which found "the accident rate for stolen cars [to be] approximately 200 times the accident rate for cars that have not been stolen." The expert relied on a study which found that "police pursuit was involved in [thirty-seven] percent of the motor vehicle theft cases examined [in a] national sample."

■ {4} As a result of Plaintiffs' inclusion of this affidavit, we treat the motion to dismiss as a motion for summary judgment. *See* Rule 1–012(B) ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."). However, the standard of review effectively remains the same; this Court accepts as true the facts as alleged by Plaintiffs in their complaint as well as those in their affidavit to determine whether, as a matter of law, Defendant is entitled to judgment. *See GCM, Inc. v. Ky. Cent. Life Ins. Co.*, 1997–NMSC–052, ¶ 13, 124 N.M. 186, 947 P.2d 143.

{5} Defendant, relying on a series of New Mexico cases, argued that there is no liability on its part in this situation. New Mexico precedent clearly supports Defendant's position in this case. Plaintiffs ask this Court to overrule our prior cases and follow the minority position of other jurisdictions. For the reasons that follow, we agree with Plaintiffs' position.

## II. Discussion

### A. Duty

**1. Introduction**

■ {6} Generally, a negligence claim requires the existence of a duty from a de-

---

1. Plaintiffs claim that "the neighborhood surrounding Quality Pontiac is known to be a high-crime area" based on their affidavit. We note that the affidavit does not support this statement and instead refers to Albuquerque as a whole, not individual neighborhoods; thus, we do not accept this unsupported conjecture in determining whether or not Plaintiffs have stated sufficient facts to support the element of duty.

fendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages. "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." *Ramirez v. Armstrong*, 100 N.M. 538, 541, 673 P.2d 822, 825 (1983), *overruled on other grounds by Folz v. State*, 110 N.M. 457, 460, 797 P.2d 246, 249 (1990); *accord Calkins v. Cox Estates*, 110 N.M. 59, 62, 792 P.2d 36, 39 (1990). "Negligence is generally a question of fact for the jury. A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant. Whether a duty exists is a question of law for the courts to decide." *Schear v. Bd. of County Comm'rs*, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984) (citations omitted); *accord Solon v. WEK Drilling Co.*, 113 N.M. 566, 571, 829 P.2d 645, 650 (1992) ("It is thoroughly settled in New Mexico, of course, that whether the defendant owes a duty to the plaintiff is a question of law."); *Calkins*, 110 N.M. at 61, 792 P.2d at 38 (stating that the question of duty "must be decided as a matter of law by the judge, using established legal policy").

{7} Thus, we analyze whether one in possession of a vehicle owes a duty to an individual injured as the result of an accident caused by the negligent or criminal acts of a third party who stole the car as a threshold question of law. *See Lester ex rel. Mavrogenis v. Hall*, 1998–NMSC–047, ¶ 9, 126 N.M. 404, 970 P.2d 590; *Leyba v. Whitley*, 120 N.M. 768, 771, 907 P.2d 172, 175 (1995) ("Whether [defendant attorneys] owed a duty to [a plaintiff] is a question of law and is based upon policy considerations.") (citations omitted). "If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant." *Ramirez*, 100 N.M. at 541, 673 P.2d at 825. Foreseeability of a plaintiff alone, however, does "not end the inquiry for the imposition of a duty." *Lester*, 1998–NMSC–047, ¶ 9, 126 N.M. 404, 970 P.2d 590; *see also Leyba*, 120 N.M. at 771, 907 P.2d at 175. "Policy determines duty." *Torres v. State*, 119 N.M. 609, 612, 894 P.2d 386, 389 (1995). "The existence of a tort duty is a policy

question that is answered by reference to legal precedent, statutes, and other principles of law." *Ruiz v. Garcia*, 115 N.M. 269, 272, 850 P.2d 972, 975 (1993); *accord Leyba*, 120 N.M. at 771, 907 P.2d at 175; *Calkins*, 110 N.M. at 62, 792 P.2d at 39.

{8} On the other hand, proximate cause is generally a question of fact for the jury. *Calkins*, 110 N.M. at 61, 792 P.2d at 38 (noting that proximate cause is a question of fact). As this Court has frequently noted, questions of both proximate cause and duty are related to the concept of foreseeability. "Integral to both [duty and proximate cause] is a question of foreseeability." *Id.* "Both questions of foreseeability are distinct; the first must be decided as a matter of law by the judge, using established legal policy in determining whether a *duty* was owed petitioner, and the second, *proximate cause*, is a question of fact." *Calkins*, 110 N.M. at 61, 792 P.2d at 38. "Duty and foreseeability have been closely integrated concepts in tort law since the court in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928) stated the issue of foreseeability in terms of duty." *Ramirez*, 100 N.M. at 541, 673 P.2d at 825.

> The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others. The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former is a minimal threshold *legal* requirement for opening the courthouse doors, whereas the latter is part of the much more specific *factual* requirement that must be proved to win the case once the courthouse doors are open.

*McCain v. Fla. Power Corp.*, 593 So.2d 500, 502 (Fla.1992) (citation and footnote omitted); *see Calkins*, 110 N.M. at 61, 792 P.2d at 38.

{9} We have expressed that "there is nothing sacred about 'duty,' which is nothing more than a word, and a very indefinite one, with which we state our conclusion."

*Ramirez,* 100 N.M. at 541, 673 P.2d at 825 (quoted authority and quotation marks omitted). Ultimately, a duty exists only if "the obligation of the defendant [is] one to which the law will give recognition and effect." *Id.* In other words, a duty "establishes the legally recognized obligation of the defendant to the plaintiff." *Id.* The Court of Appeals has similarly recognized that duty requires analysis of both foreseeability and policy.

Our Supreme Court has long recognized, however, that the question of duty is not merely a matter of determining whether a particular plaintiff, a particular event, and a particular injury are foreseeable. In *Ramirez,* for example, the Supreme Court focused on foreseeability *and* whether the obligation of the defendant is one to which the law will give recognition and effect. *Madrid v. Lincoln County Med. Ctr.,* 121 N.M. 133, 139, 909 P.2d 14, 20 (Ct.App.1995) (quotation marks and quoted authority omitted), *aff'd,* 1996–NMSC–049, ¶ 31, 122 N.M. 269, 923 P.2d 1154 (affirming on the ground of "[s]ound public policy").

{10} In the present case, we determine whether, as a threshold question of law, one who leaves an unattended and unlocked vehicle with its ignition keys inside foreseeably creates a zone of risk and a general unreasonable threat of harm and thus owes a duty of ordinary care to others injured in a resulting automobile accident caused by the criminal or negligent actions of a third party. For our duty analysis, "it must be determined that the injured party was a foreseeable plaintiff—that he [or she] was within the zone of danger created by [the defendant's] actions[—] . . . as a matter of law by the judge, using established legal policy . . . ." *Calkins,* 110 N.M. at 61, 792 P.2d at 38. We must analyze whether, as a matter of policy as well as foreseeability, one in such circumstances has an obligation to the injured party for which we will give legal effect and recognition.

2. **Whether Defendant Owed Plaintiffs a Statutory Duty**

{11} In analyzing whether Defendant owed a duty to Plaintiffs, we first address Plaintiffs' assertion that Defendant owed them a statutory duty. *See Ruiz,* 115 N.M. at 272, 850 P.2d at 975 (stating duty in terms of a policy question based upon statutes, precedent, or other principles of law). "With deference always to constitutional principles, it is the particular domain of the [L]egislature, as the voice of the people, to make public policy." *Torres,* 119 N.M. at 612, 894 P.2d at 389. Our Legislature has directed that

> [n]o person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key and effectively setting the brake, or placing the transmission in parking position, thereon and, when standing upon any grade, turning the front wheels in such manner that the vehicle will be held by the curb or will leave the highway if the brake fails. A violation of this section shall not mitigate the offense of stealing a motor vehicle, nor shall the provisions of this section or any violation thereof be admissible as evidence in a civil action for the recovery of a stolen vehicle, or in any other civil action arising out of the theft of a motor vehicle.

NMSA 1978, § 66–7–353 (1978).

{12} The purpose of Section 66–7–353 is to protect the welfare and safety of the public by requiring owners of cars to take reasonable measures "to prevent acts which could lead to an automobile inadvertently moving without intention that it should," *Bouldin v. Sategna,* 71 N.M. 329, 332, 378 P.2d 370, 372 (1963), and we believe that the provision, by requiring that one in possession of an automobile take reasonable measures to avoid leaving the keys in the ignition, implicitly contains a policy to deter theft. *See Richardson v. Carnegie Library Rest., Inc.,* 107 N.M. 688, 701, 763 P.2d 1153, 1166 (1988) (recognizing that preventing the theft of automobiles left unlocked and unattended with the keys in the ignition "would be conducive to promoting public safety"), *limited on other grounds by Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶¶ 19–30, 36, 125 N.M. 721, 965 P.2d 305 (limiting *Richardson's* application of intermediate scrutiny to non-governmental defendants). However, because, as Defendant asserts, vio-

lation of Section 66–7–353 is inadmissible as evidence in any civil action arising out of the theft of a vehicle, we cannot conclude that the statute demonstrates ·a legislative intent to create a duty. Further, the Legislature has explicitly limited application of this provision to the "operation of vehicles upon highways," NMSA 1978, § 66–7–2 (2001), and the thief stole the vehicle at issue in the present case from a fenced lot, not a highway.

{13} Although, as Plaintiffs note, a few jurisdictions have held that statutes similar to Section 66–7–353 create a duty, *see, e.g.,* *Vining v. Avis Rent–A–Car Sys., Inc.,* 354 So.2d 54, 56 (Fla.1977) (noting that "[t]he legislature recognized that an automobile placed in the hands of an unauthorized person was more likely to be operated in a manner hazardous to the well being of the general public"), the majority of jurisdictions have rejected the notion that this type of provision creates a statutory duty. *E.g.,* *Kim v. Budget Rent A Car Sys., Inc.,* 143 Wash.2d 190, 15 P.3d 1283, 1287–88 (2001) (en banc). We agree with the majority position on this issue and thus reject Plaintiffs' reliance on the statute as the source of a duty in this case. Nevertheless, we do not believe that the absence of a duty in Section 66–7–353 resolves the question in this case.

**3.  Whether Defendant Owed Plaintiffs a Common Law Duty**

{14} Because we conclude that the Legislature has not articulated a statutory duty, we next determine whether a common law duty extends from Defendant to Plaintiffs. "Courts should make policy in order to determine duty only when the body politic has not spoken and only with the understanding that any misperception of the public mind may be corrected shortly by the [L]egislature." *Torres,* 119 N.M. at 612, 894 P.2d at 389.

**(a)  Stare Decisis**

{15} As noted above, New Mexico precedent resolves this issue in Defendant's favor. *See Bouldin,* 71 N.M. at 333, 378 P.2d at 373. Plaintiffs ask this Court to overrule *Bouldin.*

Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law. It promotes very important principles in the maintenance of a sound judicial system:  1) stability of the law;  2) fairness in assuring that like cases are treated similarly;  and 3) judicial economy.

However, the principle of stare decisis does not require that we always follow precedent and may never overrule it.

*Trujillo,* 1998–NMSC–031, ¶¶ 33–34, 125 N.M. 721, 965 P.2d 305 (citations omitted). We require special justification in order to depart from precedent. *Id.* ¶ 34.

Particular questions must be considered before overturning precedent:  1) whether the precedent is so unworkable as to be intolerable;  2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship;  3) whether the principles of law have developed to such an extent as to leave the old rule "no more than a remnant of abandoned doctrine;"  and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have "robbed the old rule" of justification.

*Id.* (quoting *Planned Parenthood v. Casey,* 505 U.S. 833, 855, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)).

This Court always demonstrates the highest regard for stare decisis, but when one of the aforementioned circumstances convincingly demonstrates that a past decision is wrong, the Court has not hesitated to overrule even recent precedent. Furthermore, the application of stare decisis is less compelling in tort cases than in property or contract settings.

*Id.* ¶ 35 (citation omitted). As discussed below, we conclude that both the third and fourth *Trujillo* considerations are present in this case. The adoption of comparative fault is a significant development in the law that leaves the analysis in *Bouldin* a mere remnant of an abandoned doctrine. The fact that there is a high rate of automobile theft and that stolen vehicles are more frequently involved in accidents are factual changes in the interval from the old rule which have

robbed the old rule of justification. We believe that these considerations merit departure from stare decisis.

### (b) *Bouldin*

{16} In *Bouldin*, the plaintiff alleged that the defendant parked his vehicle at a lounge, left it unattended, "and negligently failed to remove the ignition keys" from the vehicle. *Bouldin*, 71 N.M. at 330, 378 P.2d at 371. An unknown individual or group of people "borrowed or stole the truck and later abandoned it in the middle of the highway," and the plaintiff collided with it. *Id.* In *Bouldin*, this Court addressed the question of whether "the owner of a car who leaves it unattended and without removing the key . . . [is] liable for injuries to persons and property suffered when the car is hit after its having been abandoned on the highway by a thief who stole it." *Id.* at 331, 378 P.2d at 371.

{17} As an initial matter, we note that although *Bouldin* specifically addressed proximate cause in its analysis, 71 N.M. at 332, 378 P.2d at 372, it also addressed the concept of duty. As discussed above, it would be an unusual case which purely addressed duty or proximate cause. *See Calkins*, 110 N.M. at 61, 792 P.2d at 38 ("This case raises issues of duty and proximate cause."). Further, tort law in New Mexico has developed a finer distinction between foreseeability as the concept relates to duty and as it relates to proximate cause, which we do not believe was as clear in earlier cases such as *Bouldin*. Thus, despite the nomenclature used in *Bouldin*, the context of the entire case reveals that it addressed both what we now more specifically designate as duty and proximate cause. *Bouldin* addressed and rejected policy arguments advanced by the plaintiff:

> Plaintiff argues that with the transition from the horse and buggy age to that of the highspeed car and jet airplanes, and from the period of steam and gas powered energy to that of atom propulsion, we should keep pace with the times and apply new and modern principles, better suited for our changed and changing world. We answer the argument by pointing out that we are not convinced that the rule we are urged to adopt would better serve the legal needs of this new day, and even if we were we would be most hesitant to promulgate such rules to replace doctrine long established. This would seem to be more properly for the [L]egislature.

*Id.* at 334, 378 P.2d at 373–74. This is a classic example of a policy discussion, global and general in nature directed at a legal duty, rather than a proximate cause discussion of the specific facts of the case. *See Leyba*, 120 N.M. at 771, 907 P.2d at 175 (recognizing that policy determines duty); *Torres*, 119 N.M. at 612, 894 P.2d at 389 (same); *Ruiz*, 115 N.M. at 272, 850 P.2d at 975 (same). *Bouldin* also reviewed the plaintiffs' appeal of a judgment which sustained the defendant's motion to dismiss for failure to state a claim for which relief could be granted. 71 N.M. at 330, 378 P.2d at 371. "A motion to dismiss . . . merely tests the legal sufficiency of the complaint and is infrequently granted because its purpose is to test *the law of the claim, not the facts that support it.*" *Envtl. Improvement Div. of N.M. Health & Env't Dep't v. Aguayo*, 99 N.M. 497, 499, 660 P.2d 587, 589 (1983) (emphasis added). Further, *Bouldin* addressed the same statute as we did above. 71 N.M. at 332, 378 P.2d at 372. Analysis of a statute in this context goes to duty, or possibly breach of duty, but not to proximate cause. *See Torres*, 119 N.M. at 612, 894 P.2d at 389 (concluding that, by statute, the Legislature imposed a duty upon police officers).

{18} *Bouldin* additionally quoted a commentator's proposition which "suggests that the problem is not in fact one of causation, and to so treat it is to avoid the real issue. . . . [A] conclusion that the act complained of was not the proximate cause of the injury really means that the actor was not negligent at all or that his [or her] negligence, if any, does not cover such a risk." 71 N.M. at 333, 378 P.2d at 373 (quoted authority and quotation marks omitted). "It is only where such misconduct was to be anticipated, and the risk of it was unreasonable, that liability will be imposed for such intervening acts." *Id.* at 333–34, 378 P.2d at 373 (quoted authority and quotation marks omitted). The Court apparently accepted this reasoning, concluding, "in our view, that theft of the

defendant's car was not to be anticipated and that such theft and the subsequent negligent leaving of the car in the road was such a remote risk that liability should not be imposed." *Id.* at 334, 378 P.2d at 373. The concept of remoteness in this context is connected to duty. As noted above, the Court then concluded its discussion by expressing an unwillingness to adopt a new rule despite the plaintiffs' suggestion that it "should keep pace with the times and apply new and modern principles, better suited for our changed and changing world." *Id.* at 334, 378 P.2d at 374. Our review of *Bouldin* indicates that the Court was hesitant to hold that a defendant who leaves his or her keys in an unattended car owes a duty to a plaintiff injured by the acts of a thief because, as a matter of policy, the theft and subsequent accident are too remote a risk. "The question is essentially one of the scope of the defendant's obligation, and far removed from causation." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 44, at 305 (5th ed.1984). In other words, the question is "one of the policy as to imposing legal responsibility," which is a matter of duty, not proximate cause. *Id.* § 44, at 301. Thus, we believe it is clear that *Bouldin* involved both duty and proximate cause and focused principally on duty. As discussed below, we conclude that we must overrule *Bouldin* on its holding that there is no duty in such a case and that there is no proximate cause as a matter of law between leaving ignition keys in an unattended vehicle and an accident precipitated by a thief.

**(c) The Foreseeability Component of Duty**

{19} As an initial step in the establishment of a common law duty, along with the required component of policy, "a potential plaintiff must be reasonably foreseeable to the defendant because of defendant's actions." *Klopp v. Wackenhut Corp.*, 113 N.M. 153, 158, 824 P.2d 293, 298 (1992) (quoting *Calkins*, 110 N.M. at 62, 792 P.2d at 39). "If the harm was not willful, [the plaintiff] must show that the act as to [the plaintiff] had possibilities of danger so many and apparent as to entitle [the plaintiff] to be protected against the doing of it though the harm was unintended." *Palsgraf*, 162 N.E.

at 101. In other words, in a negligence case, a plaintiff must demonstrate that the defendant's act created a foreseeable zone of danger of such a magnitude that the defendant owes a duty to the plaintiff to refrain from engaging in the act. *Calkins*, 110 N.M. at 61, 792 P.2d at 38.

{20} New Mexico has adopted and applied for decades the majority view of *Palsgraf*, that a negligent actor only owes a duty to those whose injuries are a foreseeable result of the negligence, rather than the dissenting *Palsgraf* view, that one owes a duty to the world, even if the plaintiff is outside of the zone of danger. *Compare Solon*, 113 N.M. at 569, 829 P.2d at 648 (" '[N]egligence in the air, so to speak, will not do.' ") (quoted authority omitted) (alteration in original), *with Palsgraf*, 162 N.E. at 103 (Andrews, J., dissenting) ("Every one owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others. Such an act occurs. Not only is he [or she] wronged to whom harm, might reasonably be expected to result, but he [or she] also who is in fact injured, even if he [or she] be outside what would generally be thought the danger zone."). This Court has consistently relied on the principle of foreseeability, along with policy concerns, to determine whether a defendant owed a duty to a particular plaintiff or class of plaintiffs.

> A plaintiff must show that defendant's actions constituted a wrong against [plaintiff], not merely that defendant acted beneath a required standard of care and that plaintiff was injured thereby. [Plaintiff] must show that a relationship existed by which defendant was legally obliged to protect the interest of plaintiff. This concept limits liability for negligent conduct—a potential plaintiff must be reasonably foreseeable to the defendant because of defendant's actions.

*Calkins*, 110 N.M. at 62, 792 P.2d at 39. Foreseeability is a critical and essential component of New Mexico's duty analysis because "no one is bound to guard against or take measures to avert that which he [or she] would not reasonably anticipate as likely to

happen." *Bogart v. Hester,* 66 N.M. 311, 316, 347 P.2d 327, 330 (1959). "[T]here can be no duty in relation to another person *absent* foreseeability ...." *Solon,* 113 N.M. at 572, 829 P.2d at 651 (Ransom, C.J., specially concurring).[2]

{21} The present case is complicated by the fact that Plaintiffs' injuries were directly caused by Garcia's criminal operation of the stolen vehicle. As Defendant notes, "[a]s a general rule, a person does not have a duty to protect another from harm caused by the criminal acts of third persons unless the person has a special relationship with the other giving rise to a duty." *Ciup v. Chevron U.S.A., Inc.,* 1996–NMSC–062, ¶ 5, 122 N.M. 537, 928 P.2d 263; *Rummel v. Edgemont Realty Partners, LTD.,* 116 N.M. 23, 26, 859 P.2d 491, 494 (Ct.App.1993). However, "the criminal acts of a third person will not relieve a negligent defendant of liability if the defendant should have recognized that his or her actions were likely to lead to that criminal activity." *Sarracino v. Martinez,* 117 N.M. 193, 195–96, 870 P.2d 155, 157–58 (Ct.App.1994).

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his [or her] negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself [or herself] of the opportunity to commit such a tort or crime.

*Id.* at 195, 870 P.2d at 157 (quoted authority and emphasis omitted). Thus, the lack of a special relationship does not end our inquiry.

Rather, under the facts of this case as alleged, we find persuasive an exception to the general rule other than a special relationship: whether Defendant realized or should have realized the likelihood that leaving an ignition key in an unlocked and unattended vehicle created a situation in which a third person might avail himself or herself of the opportunity to commit criminal acts such that Defendant reasonably could be said to have created or increased a risk of harm to Plaintiffs through the criminal conduct of the thief.

{22} The present case presents a claim whereby Defendant, arguably, knew or should have known that a theft was likely to occur, and Defendant's actions may have enhanced or increased the risk of such criminal conduct. According to Plaintiffs' affidavit, Albuquerque has a high auto theft rate, and thieves are much more likely to steal vehicles to which they have ready access, as when the cars are left unlocked and unattended with the key in the ignition. Stolen cars are much more likely to be involved in automobile accidents. In this context, Defendant's alleged conduct leaving the keys in the ignition of an unlocked and unattended vehicle arguably increased the likelihood that criminal acts would occur, which ultimately led to the accident in which Plaintiffs were injured, so that we impose a duty of ordinary care.

{23} In *Bouldin,* this Court considered the thief's actions to be an independent intervening cause of the accident which resulted in the plaintiffs' injuries. 71 N.M. at 333, 378 P.2d at 373. "An independent intervening cause is 'a cause which interrupts the natural sequence of events, turns aside their cause, prevents the natural and probable results of the original act or omission, and produces a different result, that could

---

2. Through the concept of remoteness, the overarching question for the Court is whether issues of policy trump foreseeability and preclude imposing a duty in a particular case. *See Solon,* 113 N.M. at 572, 829 P.2d at 651 (Ransom, C.J., specially concurring). We note that some legal scholars continue the longstanding debate over the role of foreseeability in a duty analysis. *Compare* Restatement (Third) of Torts: Liability for Physical Harm, § 6 cmt. f (Tentative Draft No. 2, 2002) ("Modern scholars tend to classify the issue of the foreseeable plaintiff under the general heading of proximate cause, as does this Restatement in Chapter 6."), *with* John C.P. Goldberg & Benjamin C. Zipursky, *The Restatement (Third) and the Place of Duty in Negligence Law,* 54 Vand. L.Rev. 657, 727 (2001) ("Sometimes foreseeability is treated as an issue of law, sometimes as an issue of fact.... Foreseeability is in the language of duty, the language of breach, and the language of proximate cause.... [F]oreseeability plays a special role in the context of questions about obligation, but it is not the only question relating to duty in that sense.").

not have been reasonably foreseen.'" *Torres v. El Paso Elec. Co.*, 1999–NMSC–029, ¶ 12, 127 N.M. 729, 987 P.2d 386 (quoting *Thompson v. Anderman*, 59 N.M. 400, 411–12, 285 P.2d 507, 514 (1955)).[3] "Independent intervening cause is a question of policy, foreseeability, and remoteness." *Torres*, 1999–NMSC–029, ¶ 14, 127 N.M. 729, 987 P.2d 386. "[T]he doctrine reflects traditional notions of proximate causation and the need to limit potentially limitless liability arising from mere cause in fact." *Id.* Although the doctrine is closely related to proximate cause, because independent intervening cause raises issues of policy, foreseeability, and remoteness, and purposefully functions to limit what could otherwise be boundless liability, it is more appropriately discussed in the context of duty, at least when it is applied as a matter of law, as it was in *Bouldin*. *Braun v. New Hope Township*, 646 N.W.2d 737, 740 (S.D.2002) ("The intervening/superceding cause analysis questions the extent of the obligation, or duty, of the original actor who was negligent. Although the question is often expressed in terms of 'cause' or 'proximate cause,' those terms avoid the real issue.") (citation omitted).

{24} This Court, in *Bouldin*, concluded that it did "not perceive theft of a car as a natural event to be foreseen by a person who is negligent in leaving his [or her] car unattended with the key in the ignition." 71 N.M. at 333, 378 P.2d at 373. Plaintiffs presented an affidavit in the district court which alleged a high rate of car thefts and the proposition that stolen vehicles are more likely to be involved in accidents. Thus, Plaintiffs in the present case have persuaded us that the theft of a car left unattended and unlocked with the key in the ignition is a natural event which can be foreseen by the tortfeasor, as is the subsequent accident and resulting injuries. Defendant's acts foreseeably created a zone of danger, which included Plaintiffs.

{25} We cannot conclude that Plaintiffs' injuries were so unforeseeable that we must hold that Defendant did not owe Plaintiffs a duty as a matter of law. We conclude that *Bouldin* is no longer viable in its holding that such ensuing theft and subsequent negligent or criminal operation of the vehicle resulting in injury are not natural, foreseeable events attendant upon leaving one's keys in an unlocked, unattended vehicle. *Bouldin* was based on a set of facts and assumptions that no longer reflects our current situation, and we cannot ignore the connection between stolen vehicles and car accidents. However, as discussed above, foreseeability alone does not determine duty. We next address policy matters which bear upon the existence of a duty.

## (d) The Policy Component of Duty: Adoption of Comparative Fault

{26} The recognition of a legal duty is dependent upon considerations of both foreseeability and policy. In addition to our conclusion that leaving an ignition key in an unlocked and unattended vehicle creates a foreseeable zone of danger which supports a duty, we must now decide whether, as a matter of policy, we should impose a duty. We conclude that a change in our law warrants the recognition of a legal duty. This Court decided *Bouldin* in 1963, prior to our

3. Criminal acts by third parties are a classic example of an independent intervening cause. Both Defendant and Plaintiffs claim that this Court's recent opinion addressing independent intervening cause in the context of comparative fault, *Torres*, 1999–NMSC–029, 127 N.M. 729, 987 P.2d 386, support their respective positions. Plaintiffs misinterpret the discussion in *Torres;* that case clearly stated that its analysis does not apply to criminal acts. 1999–NMSC–029, ¶ 15 n. 2, 127 N.M. 729, 987 P.2d 386. We followed this statement with a citation to *Bouldin* and its holding, and thus, this Court cited with approval the holding in *Bouldin*. *Id.* However, because we overrule *Bouldin*, we also overrule this dicta in *Torres* to the extent that it reaffirmed *Bouldin*. By overruling *Torres'* discussion of *Bouldin*, we do not address or even reach the myriad number of scenarios in which a criminal act might be an independent intervening cause between a tortfeasor's actions and an unforeseeable injured plaintiff. *See* Restatement (Third) of Torts: Liability for Physical Harm, § 19 cmt. c (Tentative Draft No. 1, 2001) ("There can be unusual cases, however, in which the third party's misconduct takes a form quite different from the misconduct the foreseeability of which renders the defendant's original conduct negligent. For example, if the car thief uses the car deliberately to run down the thief's estranged spouse, a finding of proximate cause may be improper.").

adoption of comparative fault, as discussed below. The implicit fear in *Bouldin* may very well have been the clearly troublesome notion of holding a car owner completely responsible for the negligent or criminal actions of a third party because of joint and several liability; in other words, the defendant in *Bouldin* could have been liable for all of the injuries suffered by the plaintiffs, rather than in proportion to his fault. *See Torres*, 1999–NMSC–029, ¶ 13, 127 N.M. 729, 987 P.2d 386 ("As a natural corollary to the adoption of comparative negligence . . ., the Court of Appeals subsequently abolished joint and several liability, under which, among multiple defendants, each defendant regardless of proportion of fault, had been liable for one hundred percent of a plaintiff's damages."). However, this fear is alleviated by principles of comparative fault.

■ {27} In *Scott v. Rizzo*, 96 N.M. 682, 690, 634 P.2d 1234, 1242 (1981), this Court adopted comparative negligence in order to fairly distribute the burden of fault and "hold[ ] all parties fully responsible for their own respective acts to the degree that those acts have caused harm." Our statute addressing several liability clearly articulates that a defendant is only liable in proportion to his or her fault.

[A]ny defendant who establishes that the fault of another is a proximate cause of a plaintiff's injury shall be liable only for that portion of the total dollar amount awarded as damages to the plaintiff that is equal to the ratio of such defendant's fault to the total fault attributed to all persons, including plaintiffs, defendants, and persons not party to the action.

NMSA 1978, § 41–3A–1(B) (1987). We hold that New Mexico's adoption of comparative negligence is a significant development in a principle of law that results in the analysis in *Bouldin* becoming a mere remnant of an abandoned doctrine. *See Richardson*, 107 N.M. at 701, 763 P.2d at 1166. As we observed in *Torres*, an overly broad use of the doctrine of independent intervening cause to limit liability, as a matter of law, based upon the disproportionate fault of a third party "is inconsistent with New Mexico's system of

pure comparative fault." *Torres*, 1999–NMSC–029, ¶ 15, 127 N.M. 729, 987 P.2d 386.

{28} This Court has "rejected cases from other jurisdictions refusing to apportion fault between the negligent defendants and intentional tortfeasors under the principle that '[n]egligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent.' " *Barth v. Coleman*, 118 N.M. 1, 3, 878 P.2d 319, 321 (1994) (citation omitted; alteration in original). We rejected this principle "because it is inconsistent with New Mexico's adoption of comparative fault and abolition of joint and several liability." *Id.* at 4, 878 P.2d at 322. Thus, in New Mexico, " 'each individual tortfeasor should be held responsible only for his or her percentage of the harm.' " *Id.* (quoting *Reichert v. Atler*, 117 N.M. 623, 624, 875 P.2d 379, 381 (1994)).

■ {29} Should Plaintiffs prevail in proving their negligence claim, Defendant is only liable to Plaintiffs for the damages the jury or judge determines Defendant caused. "[O]ne defendant may not be required to pay another defendant's share of the damages." *Ramirez*, 100 N.M. at 543, 673 P.2d at 827. "The total damages suffered by a plaintiff will be apportioned between all parties in proportion to their fault." *Id.* at 542, 673 P.2d at 826. Defendant is, therefore, not liable for the percentage of fault attributable to Garcia, any other tortfeasors, or any comparative fault on the part of Plaintiffs which may have contributed to the accident. *See Barth*, 118 N.M. at 4, 878 P.2d at 322. Thus, the district court shall instruct the jury regarding several liability, and, if applicable, comparative negligence. *See* UJI 13–2219 NMRA 2003. We believe that the analysis in *Bouldin* has become an anachronism in light of the apportionment of liability based on the percentage of fault in our current system of tort law.

{30} Defendant argues that factors used by other courts to determine the existence of a duty weigh against finding such a duty in this case. These factors address issues of foreseeability as well as policy. The factors include the foreseeability of harm, the certainty of injury from the wrongful act, the closeness of the connection between the

wrongful acts and the plaintiff's injuries, the moral blameworthiness of the wrongful act, the policy of preventing future harm, the burden on potential defendants, the consequences to the community from the imposition of a new duty, and the availability and cost of insurance against the risk of harm. However, we believe that leaving an ignition key in an unlocked and unattended vehicle foreseeably may result in its theft, and creates an unreasonable risk of harm from the thief's operation of the vehicle. Plaintiffs presented statistical data which indicates a high rate of car theft and that vehicles which are stolen are substantially more likely to be involved in accidents than vehicles operated by an authorized driver, supporting the foreseeability of harm and the certainty of injury. We also do not believe that the burden would be unreasonable; we could not reasonably require that all conceivable security measures be taken, but we do believe that those in possession of vehicles must take care, at a minimum, not to leave them unlocked and unattended with the key in the ignition. Whether Defendant did in fact take appropriate security precautions in the present case is, as discussed below, a question concerning breach of a duty of ordinary care for the finder of fact. We believe that the relatively simple act of removing the key from the vehicle or not leaving the vehicle unattended or unlocked while the key is in the ignition is not overly burdensome and would benefit both the owner and the general public by helping to deter theft and ensuing accidents.

■ {31} In the present case, we have concluded that the risk of harm to the class of persons typified by Plaintiffs was not unforeseeable and that a duty of ordinary care would be consistent with contemporary notions of public policy, most importantly, comparative fault. If one leaves a vehicle unlocked and unattended with the ignition key in the vehicle, it is not unforeseeable that a thief will steal the car, and the thief may operate the car in a negligent or criminal manner, including a high speed chase from pursuing police officers which results in injuries to bystanders. We are confident that public policy supports the imposition of a duty of care in this class of cases, especially considering the adoption of comparative

fault. Defendant owes Plaintiffs a duty based upon foreseeability and public policy, and accordingly Plaintiffs should be allowed to present their claims to a jury. Our holding is not that Defendant owes an unlimited duty to the world or a duty to actually prevent the criminal actions of a third party; Defendant owes a duty of ordinary care to foreseeable plaintiffs.

■ {32} We hold that Defendant's actions in directing the owner to leave the keys in the vehicle and leaving the vehicle unlocked and unattended created a duty to exercise ordinary care. Without any of these factors, the foreseeability and likelihood of theft and the risk of harm would diminish so substantially that such a claim would fail. We conclude, based upon the adoption of comparative negligence as well as the fact that there is a high rate of vehicle theft and that stolen vehicles are more likely to be involved in accidents, that an owner or one in possession of a vehicle reasonably can foresee that the vehicle might be stolen if he or she leaves it unattended, unlocked, and with keys in its ignition, and that he or she reasonably could anticipate that the thief might drive negligently and injure another, creating a duty to that injured party.

## B. Other Issues

### 1. Breach of Duty

■ {33} We recognize a duty in the present case. We do not address whether Defendant breached the duty of ordinary care.

[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances. This is a factual determination or, perhaps, a mixed determination of law and fact, involving as it does the application of precepts of duty to the historical facts as found by the fact finder.

*Bober v. N.M. State Fair,* 111 N.M. 644, 650, 808 P.2d 614, 620 (1991). The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case, including whether Defendant acted reasonably or negligently by keeping an unlocked, unattended vehicle with the keys in the ignition on a fenced, gated lot.

## 2. Proximate Cause

{34} Defendant argues that its actions did not proximately cause Plaintiffs' injuries. The issue of proximate cause is also for the jury or factfinder.

> A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred. It need not be the only cause, nor the last nor nearest cause. It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury.

UJI 13–305 NMRA 2003. While we agree with Defendant that there is not great closeness in the connection between Defendant's wrongful acts and the resulting injuries, especially considering a gap in time of approximately fourteen hours and a distance of many miles, we do not believe that the connection is so tenuous that we must conclude, as a matter of law, that there is no proximate cause. We leave the fact that the accident occurred approximately fourteen hours after Garcia stole the car from Defendant's lot and the fact that the accident took place several miles away from its property for the jury's consideration on the issue of proximate cause. *See Calkins,* 110 N.M. at 65–66 & n. 6, 792 P.2d at 42–43 & n. 6. Thus, the finder of fact must determine whether Defendant's acts, which occurred many hours prior to the accident and many miles away, were a proximate cause of Plaintiffs' injuries.

{35} As discussed above, we conclude that Defendant, leaving the car unlocked, unattended, and with the key in the ignition,

could have reasonably foreseen Garcia's intervening theft of the vehicle, as well as Garcia's subsequent criminal and negligent operation of it, and that Defendant's actions created an unreasonable risk of harm. The foreseeability of injury, plus the policy considerations discussed above, create the legal duty to Plaintiffs. Having made the necessary determination that Defendant owes Plaintiffs a duty, we cannot conclude as a matter of law based on these facts that no rational jury could find that Defendant's actions proximately caused Plaintiffs' injuries. This does not preclude a district court from reaching a different conclusion as a matter of law on the issue of proximate causation under a different set of facts. *See Calkins,* 110 N.M. at 65 n. 6, 792 P.2d at 42 n. 6 ("A court may decide questions of negligence and proximate cause, if no facts are presented that could allow a reasonable jury to find proximate cause . . . .").

> Nothing . . . stated hereinabove is intended to imply that a factfinder could not reasonably return a verdict for the car owner in this case, or that the evidence in some comparable situation might not possibly justify even a judgment for the vehicle owner as a matter of law. Determinations in this regard must necessarily depend on the entire circumstantial spectrum, such as the position of the vehicle and the nature of the locality in which the vehicle is left, the extent of access thereto, operational condition of the vehicle, its proximity to surveillance, the time of day or night the vehicle is left unattended, and the length of time (and distance) elapsing from the theft to the accident.

*McClenahan v. Cooley,* 806 S.W.2d 767, 776 (Tenn.1991) (alteration in original).

## 3. Loss of Consortium

{36} Finally, although Plaintiffs concede that Alma Rosa De Ruiz, wife to the decedent, must withdraw her wrongful death claim because she is not the decedent's personal representative, Plaintiffs contend that she has a viable loss of consortium claim based on a successful suit by Plaintiffs. This dependent claim would not fail if Plaintiffs successfully complete their wrongful death

action. *See Romero v. Byers,* 117 N.M. 422, 426, 872 P.2d 840, 844 (1994) (recognizing loss of consortium claims).

## III. Conclusion

{37} We reverse the district court. We conclude that an owner or one in possession of a vehicle who leaves a key in the ignition of an unattended and unlocked car owes a duty of ordinary care to those individuals injured in an automobile accident involving the vehicle when a thief steals the car and negligently or criminally causes the accident. The jury or finder of fact must decide whether Defendant's actions breached this duty of ordinary care and are a proximate cause and cause in fact of injuries which Plaintiffs prove.

{38} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, and RICHARD C. BOSSON, Justice (specially concurring).

BOSSON, Justice (specially concurring).

{39} I fully concur in both the reasoning and the result of Justice Serna's majority opinion which correctly construes and applies, and perhaps extends, existing New Mexico law. I wish to raise one additional issue.

{40} New Mexico courts have been accused of using the foreseeable plaintiff "as a legal fiction for restricting or expanding liability." Nancy Desiderio, *Tort Law–Evolution of Duty in New Mexico: Torres v. State,* 26 N.M. L.Rev. 585, 585 (1996). Perhaps our critics are right. Justice Montgomery came close to reexamining the *Palsgraf* question of whether we should continue to use foreseeable injury to a particular plaintiff as a test of legal duty. Despite concluding that "we do not perceive this case to be a good one in which to reexamine the social policy that limits a tortfeasor's liability to the foreseeable plaintiff," Justice Montgomery's query lingers. *Solon v. WEK Drilling Co.,* 113 N.M. 566, 569, 829 P.2d 645, 648 (1992).

{41} Part of the confusion lies in our dual use of the term "foreseeability." It is used first by the judge as ascertaining whether the defendant owes a legal duty of care, and later by the jury in determining factual issues of breach and causation. Perhaps the better question for the court should be "unforeseeability;" that is, whether no reasonable jury could find the injury foreseeable with respect to the plaintiff. As Justice Ransom has repeatedly reminded us, the overarching question for any court is whether issues of sound legal and social policy trump foreseeability and preclude imposing a duty in a particular case. *Id.* at 572–53, 829 P.2d at 651–52 (Ransom, C.J., specially concurring); *see also Torres v. State,* 119 N.M. 609, 612–13, 894 P.2d 386, 389–90 (1995). Perhaps policy issues like remoteness, aided by indications of legislative intent, are the better tools for shaping duty, and we should leave the foreseeable plaintiff for the jury.

{42} UJI 13–1604 NMRA 2003 instructs: "Every person has a duty to exercise ordinary care for the safety of the person and the property of others." (Emphasis omitted.) That sounds more like Judge Andrews' dissent than Judge Cardozo's majority opinion in *Palsgraf.* When we attempt to define legal duty in terms of a foreseeable plaintiff, it is all too tempting to use "foreseeability" as a surrogate for result-oriented conclusions. As Dean Prosser said almost fifty years ago on the difficulties inherent in defining duty in terms of the foreseeable plaintiff: "These are shifting sands, and no fit foundation. There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it." William L. Prosser, *Palsgraf Revisited,* 52 Mich. L.Rev. 1–32 (1953).

{43} The modern view seems more inclined to classify the issue of the foreseeable plaintiff under proximate cause, normally for the jury to resolve. Restatement (Third) of Torts: Liability for Physical Harm § 6 cmt. f (Tentative Draft No. 2, 2002) ("Whether this requirement of a 'foreseeable plaintiff' is an aspect of the doctrine of duty or instead of the doctrine of proximate cause is a point that the Comment to § 281(b) [Restatement (Second) of Torts] does not make clear. Modern scholars tend to classify the issue of the foreseeable plaintiff under the general heading of proximate cause, as does this

Restatement [Third] in Chapter 6."); *see also id.* § 29 cmt. n (Scope of Liability).

{44} I hope we will hear more on this issue in the future as attitudes change toward *Palsgraf.*