This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**BILL CAVALIERE,**

Plaintiff-Appellant,

v.                                        **NO. 31,531**

**NEW MEXICO INSTITUTE OF MINING and TECHNOLOGY, through its BOARD OF REGENTS,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF HIDALGO COUNTY**
**J.C. Robinson, District Judge**

Caren I. Friedman
Santa Fe, NM

The Pickett Law Firm
Lawrence M. Pickett
Las Cruces, NM

for Appellant

Sandenaw Law Firm, P.C.

T.A. Sandenaw, Jr.
Las Cruces, NM

for Appellee

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Bill Cavaliere (Plaintiff) sued the New Mexico Institute of Mining and Technology (Defendant) for breach of employment contract and implied covenant of good faith and fair dealing. After trial, Defendant moved for judgment as a matter of law, pursuant to Rule 1-050 NMRA. The district court directed a verdict in favor of Defendant and dismissed Plaintiff's claims with prejudice. Plaintiff appeals, arguing that the district court's ruling improperly resolved conflicting evidence regarding the existence and breach of an employment contract between the parties and thereby denied him his constitutional right to a trial by jury. Because we determine that judgment as a matter of law was improper, we reverse and remand for a new trial.

**BACKGROUND**

{2}     In 2008 Plaintiff filed a lawsuit against Defendant alleging that Defendant breached an employment contract it had entered into with Plaintiff. Plaintiff sought monetary and exemplary damages, and demanded a jury trial. Among the facts alleged by Plaintiff in support of his complaint, he specifically asserted that in Fall 2003

2

Defendant's program manager offered him a job as captain or assistant chief of police at Defendant's Playas campus location.[1] Plaintiff claimed that he accepted the position and commenced his responsibilities as associate chief in October 2004, but that approximately a year later, another individual was hired for the job and replaced him. Plaintiff filed an administrative grievance in late 2005 regarding the hiring of his replacement, but his complaint was rejected by Defendant's Board of Regents. Having exhausted his administrative remedies, Plaintiff filed his complaint in the instant case.

{3}     Defendant initially moved unsuccessfully to dismiss Plaintiff's action for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rules 1-012(B)(1), (6) NMRA, respectively. Defendant then answered Plaintiff's complaint, and again sought dismissal, this time premised upon assertions that the statute of limitations had expired and that Defendant was immune from being sued based upon its status as a governmental entity under NMSA 1978, § 37-1-23 (1976). Defendant also sought summary judgment based on the absence of genuine issues of material fact; that Plaintiff was "never hired to fill the claimed position pursuant to any written contract;" and again asserting governmental immunity from suit. The district court denied Defendant's motion for summary judgment and

[1]The record reflects the use of various terms to describe the position that Plaintiff alleges Defendant offered him. For the purposes of clarity, we use the term "associate chief" as it appears to be the title agreed upon by the parties.

an ensuing motion for reconsideration, based upon the district court's conclusion that "[t]here are questions of fact for a jury to decide."

{4} The case proceeded to a jury trial, during which Plaintiff testified that he was offered the position of chief of police in Fall 2003 by Defendant's program manager, Michael Hensley, who reaffirmed the offer during a subsequent meeting in early 2004. Although Plaintiff conceded during trial that Hensley later informed him that the chief position was already occupied, and his title would be "associate chief" instead of chief. Plaintiff testified that he "was satisfied with that" position and accepted the offer. Plaintiff presented corroborating testimony of both Rich Upshaw, another employee of Defendant, and John McCarty, a witness who was present at one of the meetings with Hensley. Upshaw testified that it was common knowledge that Defendant, specifically through Hensley, was offering "positions to certain people." McCarty testified directly that his impression of the conversation he witnessed between Hensley and Plaintiff was that Hensley "wanted [Plaintiff] to be the chief or to be the officer in charge." On cross-examination, he further stated, "it sounded very clear to me that [Plaintiff] was actually offered that job."

{5} Plaintiff additionally testified that Louis Latasa, the director or chief of campus police, confirmed Plaintiff's position as associate chief on numerous occasions throughout late 2004 and into early 2005. However, during Summer 2005, Plaintiff

4

testified he heard that the associate chief's position would instead be filled by the man who ultimately replaced him, Richard Gomez. Plaintiff stated that when he confronted Latasa about this information, Latasa denied its truth; however, Defendant hired Gomez for the associate chief position and Gomez commenced his duties in January 2006. Although he was no longer employed as associate chief, Plaintiff testified that he remained working for the police department at the Playas campus.

{6}      At the conclusion of Plaintiff's case, Defendant moved for a directed verdict pursuant to Rule 1-050. The district court denied the motion because "if, at this point, you considered the evidence in the light most favorable to [P]laintiff that the jury could determine facts in his favor." During its presentation of evidence, Defendant called Hensley to testify and offered the deposition testimony of Latasa. In court, Hensley testified that he never offered the associate chief position to Plaintiff and that he had "no authority to offer any job, much less a job at that level." When confronted with Plaintiff's contrary testimony, Hensley stated, "[Plaintiff] has what his version of something is, and I'm telling you . . . the truth." Similarly, during his deposition, Latasa testified that he never talked to Plaintiff about being an associate chief because "[t]here was no way that could be done." He also testified that he never confirmed the associate chief position with Plaintiff because "there was no need for an associate director" and informed Plaintiff that his position would be that of a police officer.

5

Even though Latasa testified that he was in charge of hiring law enforcement employees, he asserted that he "didn't hire [Plaintiff]." When asked who hired Plaintiff, Latasa responded with "according to [Plaintiff], Michael Hensley." However, Latasa could not provide any additional information regarding Plaintiff's title apart from the fact that "[Plaintiff] was hired on the spot."

{7} When both sides rested, Defendant again sought directed verdict, arguing that "reasonable jurors would not be able to find the existence of a written contract of employment for the position that [P]laintiff asserts an entitlement, and for which he claims there has been a breach of contract." In discussing the motion, the district court observed that the "only evidence on [Plaintiff's] side . . . is the testimony of himself, that he thought that when a police department got started up that Latasa and Hensley told him he was going to be chief. And both Hensley and Latasa denied that. So it's evenly divided." The district court further stated, "[t]here's no question that there's an employment contract[,]" but indicated that "I don't think that there's any evidence that there was an agreement to hire him as associate chief." Over Plaintiff's objection, the court concluded, "I don't think that Hensley hired him. And there's nothing to show that he had the authority." The district court found that there was not "evidence[] sufficient to submit to the jury" and granted Defendant's motion for directed verdict, dismissing Plaintiff's claims with prejudice.

**DISCUSSION**

{8}     On appeal, Plaintiff asserts error only with regard to the district court's directed verdict. "A directed verdict is a drastic measure that is generally disfavored inasmuch as it may interfere with the jury function and intrude on a litigant's right to a trial by jury." *Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 26, 127 N.M. 729, 987 P.2d 386, *overruled on other grounds by Herrera v. Quality Pontiac*, 2003-NMSC-018, 134 N.M. 43, 73 P.3d 181. It is an appropriate remedy only "when there are no true issues of fact to be presented to a jury" and where "it is clear that the facts and inferences are so strongly and overwhelmingly in favor of the moving party that the judge believes that reasonable people could not arrive at a contrary result." *Torres*, 1999-NMSC-029, ¶ 26 (internal quotation marks and citation omitted). Our review is de novo; however, we "consider all evidence, insofar as the properly admitted evidence is uncontroverted, and all reasonable inferences deducible therefrom in a light most favorable to the party resisting the motion." *Id.* (internal quotation marks and citation omitted).

{9}     Appealing the district court's adverse ruling following the presentation of all evidence and immediately before the jury was to undertake its factfinding role, Plaintiff contends that plainly conflicting evidence existed regarding an implied and breached employment contract with Defendant. Such facts, he contended, constituted

7

an obligatory denial of Defendant's request for directed verdict. It is undisputed that Plaintiff's claims to the associate chief's position are not contained in a written employment contract; however, Plaintiff contends that an implied contract was created between the parties. Our Supreme Court has held that a "valid written contract[]" may be implied. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶¶ 14-15, 121 N.M. 728, 918 P.2d 7. "Whether an implied employment contract exists is a question of fact, and it may be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct." *Id.* ¶ 10 (emphasis, internal quotation marks, and citation omitted), citing *Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, ¶ 10, 108 N.M. 424, 773 P.2d 1231 (stating that an implied contract is an agreement in which the parties, by course of conduct, have shown an intention to be bound by agreement).

**{10}** In interpreting the record most favorably to Plaintiff, as our Supreme Court's precedent requires, we determine that evidence was presented during trial upon which a jury could return a verdict in Plaintiff's favor. "That such a recovery may appear remote to the presiding judge should not deprive a party of a jury determination." *W. States Mech. Contractors*, *Inc. v. Sandia Corp.*, 1990-NMCA-094, ¶ 16, 110 N.M. 676, 798 P.2d 1062. Both Plaintiff's and McCarty's testimony lent support to

8

Plaintiff's claim of the existence of an implied employment contract. The testimony could be viewed by a jury to support a conclusion that the program manager, Hensley, offered Plaintiff the position of associate chief in spite of the absence of this specificity in Plaintiff's employment application or personnel forms and in spite of Defendant's contradictory witness testimony. Indeed, whether an implied contract existed between the parties is a question of fact for the jury to decide. *Garcia*, 1996-NMSC-029, ¶ 10. "The criteria are not what the jury could have concluded, but whether they could have concluded in any other way than for the beneficiary of the directed verdict." *W. States Mech. Contractors*, *Inc.*, 1990-NMCA-094, ¶ 17. Accordingly, the district court's determination that "[t]here was no substantial, credible evidence of a written or oral contract to hire Plaintiff as . . . associate chief" was error as witness credibility falls within the purview of the jury as the factfinder. *See Beavers v. Johnson Controls World Servs.*, *Inc.*, 1995-NMCA-070, ¶ 43, 120 N.M. 343, 901 P.2d 761 ("[I]t is the province of the jury to determine the credibility of the witnesses, reconcile inconsistent or contradictory testimony, and determine where the truth lies.").

{11}     Defendant argues that the district court did not err in granting the directed verdict because any oral promises asserted by Plaintiff were inconsistent with one of several personnel action forms. Defendant argues that any inconsistencies between the

9

purported oral promises and the written contract rendered the oral promises unenforceable under Section 37-1-23(A). In support of its argument, Defendant cites *Trujillo v. Gonzalez*, which holds that where parties have "[left] portions of written contracts to oral expression, . . . oral expressions are legally significant only if they are not contradictory and have some effect upon interpretation, application[,] and legal operation of the written portion." 1987-NMSC-119, ¶ 7, 106 N.M. 620, 747 P.2d 915 (emphasis omitted). We disagree with Defendant's arguments on two bases. First, we note that *Trujillo* is not analogous to the case before us. The issue in *Trujillo* was whether the district court erred in granting a motion to dismiss the complaint for failure to allege a valid written contract and whether the court should have allowed extrinsic evidence of oral promises in order to determine the term of employment. *Id.* ¶¶ 4, 6. In the case before us however, Defendant filed a motion to dismiss on the basis that "no express, valid written contract . . . support[ed] Plaintiff's claim[.]" The district court denied this motion and proceeded to hear extrinsic evidence through witness testimony as to the existence or nonexistence of an implied employment contract.

{12}     Secondly, we do not accept Defendant's contention that the written documentation in the case is legally contradictory to Plaintiff's assertion of oral promises, rendering the oral promises unenforceable. In support of this argument,

10

Defendant specifically points to Plaintiff's application for employment in which he listed the position he was seeking as "[l]aw enforcement" and a personnel action form where Plaintiff's position is listed as "town site police officer." Defendant asserts that this personnel action form is the written contract; however, upon review of the record, a subsequent personnel action form reveals that Plaintiff's "position title" was left blank. The record additionally indicates that Defendant listed Plaintiff's position as "police chief" on one of its own official "annual off-campus receipt" forms. Accordingly, Defendant's own documentation appears to harbor significant inconsistency.

{13} Unlike the situation in *Trujillo* where the written documentation and the oral promises were demonstrably inconsistent in this case, there is discord within the written documentation itself. The documents do not establish that Defendant did not offer or hire Plaintiff for the associate chief position, nor do they establish Plaintiff's actual position title such that a reasonable jury could not find otherwise. *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 11, 106 N.M. 726, 749 P.2d 1105 (A trial court should not grant a motion for directed verdict unless it is clear that "the facts and inferences are so strongly and overwhelmingly in favor of the moving party that the judge believes that reasonable people could not arrive at a contrary result"). We conclude that based on the inconsistency within Defendant's own

11

documentation, along with the oral communications testified to by Plaintiff and McCarty, a jury could have concluded that an implied contract existed between the parties. *See Trujillo*, 1987-NMSC-119, ¶ 7. Accordingly, it was improper for the district court to direct a verdict on the basis that "[t]here was no substantial [or] credible evidence of a written or oral contract to hire Plaintiff as . . . associate chief." *See Garcia*, 1996-NMSC-029, ¶ 10.

**{14}** Defendant lastly contends that his employee handbook did not create an implied contract that Plaintiff would be hired as the associate chief. Defendant argues as well that no evidence was presented that the handbook is "position explicit[,]" requiring that Plaintiff be hired to serve in the specific position of associate chief. Again, we are unpersuaded. *Garcia* makes very clear that an implied employment contract can be "found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct." *Id.* (emphasis, internal quotation marks, and citation omitted). Thus, whether an implied contract existed between the parties is not limited to the employee handbook, and in this case, the primary dispute between the parties appears to be not with the provisions of the employment handbook, but with whether or not Plaintiff was orally offered the position of associate chief by Hensley.

12

{15} Because we have determined that the issue of whether an implied employment contract existed between the parties should have been left to the jury to decide and remand for a new trial, we decline to address the parties' remaining arguments regarding whether Defendant breached the contract in hiring Gomez.

**CONCLUSION**

{16} The directed verdict is reversed, and the case is remanded to the district court for a new trial.

{17} **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**CYNTHIA A. FRY, Judge**